**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON KOEHLER,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:15-0912** |
| **v.** | : | **(JUDGE MANNION)** |
| **Superintendent,** | : | |
| **SCI-Huntingdon.,** | | |
| | : | |
| **Respondent** | | |
| | : | |

**MEMORANDUM**

Petitioner, Jason Koehler, an inmate confined in the State Correctional Institution, Huntingdon, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He challenges his conviction and sentence imposed in the Court of Common Pleas of Monroe County. Id. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.

I.    **Background**

The procedural and factual background underlying Koehler's conviction was adopted from the trial court's Opinion and set forth in the January 30, 2015 Memorandum Opinion of the Pennsylvania Superior Court,

affirming the denial of the Petitioner's Post Conviction Relief Act ("PCRA")

petition as follows:

> In the early morning hours of February 13, 2004, Appellant entered the home of Jennifer Cullinan to purchase crack cocaine from Jason Gray, whom Appellant has dealt with on previous occasions. Ms. Cullinan, Mr. Gray and Jose Joubert were all inside Ms. Cullinan's home at the time. According to Mr. Joubert, Appellant had appeared at the residence with a loaded .357 revolver. While Mr. Joubert was putting wood in the fireplace, Appellant shot Mr. Joubert in the lower left side of his back and face. He fell to the ground. Mr. Joubert, although unable to see anything at this time, was able to hear an ensuing struggle between Mr. Gray and Appellant. Another shot was fired and Mr. Joubert heard Ms. Cullinan screaming, asking Appellant what he had done. He heard another struggle, this time between Ms. Cullinan and Appellant. Ms. Cullinan was repeatedly telling Appellant to get off her. Another shot was fired and Mr. Joubert did not hear Ms. Cullinan again.

> Appellant's version of the events is quite different. Appellant states that he had been to the Cullinan residence two previous times that day to purchase drugs. During the second time, Appellant says he left the .357 revolver with Mr. Gray as a loan for more crack cocaine because he did not have any money. On his third time back at Ms. Cullinan's home, Appellant stated that Mr. Joubert, whom he had never seen before, let him in. Appellant stood at the arm of the couch closest to the door, Mr. Joubert was to his left, and Mr. Gray was to his right. Ms. Cullinan was in the kitchen. While Mr. Joubert was handing Appellant a bag of drugs, Appellant heard a noise to his right side coming from where Mr. Gray was.

> Appellant states that Mr. Gray was pulling a rifle, which had been chambered, from underneath the couch and was pointing it in his direction. Thinking that his life was in danger, Appellant grabbed the .357 revolver from the arm of the couch, stepped toward Mr. Gray so that he was approximately two feet from him and shot him in the "face area." The gun made contact with Mr. Gray's

head when it went off. Believing that Mr. Joubert was running for more weapons, Appellant turned to his left and fired three more times in his direction, hitting both Mr. Joubert and Ms. Cullinan. Then Appellant, seeing the bag of crack cocaine that Mr. Joubert was trying to hand him, picked up the bag and ingested some of the drugs.

The next set of facts is relatively uncontradicted. Appellant and Mr. Daniels, Appellant's accomplice, began looking for money and drugs throughout the house, taking anything they could find. Appellant even went as far to stick his hands in all three of the victim's [sic] pants pockets to find more. Appellant then open[ed] the basement door, grab[bed] each victim one at a time and thr[ew] their bodies down the stairs. Mr. Joubert hear[d] someone mention that he [was] still breathing and to finish him. The other person respond[ed] that Mr. Joubert [was] going to die slowly. Once Appellant and his accomplice [left] the residence, Mr. Joubert [was] able to crawl up the stairs and eventually out of the residence to safety.

Trial Court Opinion (Post-Sentence Motion), 11/24/10 at 42-43.

On November 2, 2005, Appellant pled guilty to two counts of third-degree murder and aggravated assault. Shortly thereafter, Appellant filed a motion to withdraw his guilty plea before sentencing. On March 24, 2006, the trial court denied this motion and sentenced Appellant to an aggregate sentence of not less than 40 years nor more than 80 years['] imprisonment.

Appellant filed a post-sentence motion which the trial court denied on September 7, 2006. Appellant appealed, challenging the trial court's denial of his request to withdraw his guilty plea prior to sentencing. This Court reversed, vacating Appellant's judgment of sentence and remanding the case for trial. The Commonwealth filed a Petition for Allowance of Appeal, which our Supreme Court denied on November 17, 2008.

Appellant proceeded to a jury trial after which he was convicted of the aforementioned offenses on October 21, 2009. On the same day, the jury imposed a sentence of life imprisonment. On

December 11, 2009, the trial court imposed a life sentence without parole to be followed by a sentence of not less than 35 years nor more than 73 years. On December 21, 2009, Appellant filed a post-sentence motion seeking reconsideration of his sentence. The trial court did not enter an order denying Appellant's post-sentence motion until June 1, 2010. Appellant appealed to this Court on June 24, 2010.

**Commonwealth v. Koehler**, 1763 EDA 2010, at 1-4 (Pa. Super., filed June 27, 2011 (mem. op.). On appeal, this Court affirmed Koehler's judgment of sentence and the Pennsylvania Supreme Court denied allocator.

Koehler filed a lengthy *pro se* PCRA petition, after which the PCRA court appointed counsel. PCRA counsel filed a brief, which largely incorporated by reference Koehler's original *pro se* petition. On August 8, 2013, the PCRA court ordered counsel to file within 30 days an additional brief which did not incorporate by reference the *pro se* petition, and which clarified and distilled Koehler's claims. Counsel did not comply with the court's directive.

A PCRA evidentiary hearing was conducted on June 25, 2013. PCRA counsel filed a brief that addressed only three of the approximately fifteen issues raised in Koehler's *pro se* brief. The PCRA court entered an order denying Koehler's petition and this timely appeal followed.

During the pendency of this appeal, Koehler filed in this Court a request to proceed *pro se* due to the ineffective assistance of PCRA counsel. By order dated January 1, 2014, we remanded the proceedings and instructed the PCRA court to conduct a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), in order to determine whether Koehler's waiver of counsel was knowing, intelligent, and voluntary. After the PCRA conducted the **Grazier** hearing on March 3, 2014, it permitted Koehler to proceed *pro se.*

On appeal, Koehler raises the following issues for our review:

- 4 -

I.   Whether PCRA counsel's ineffective assistance was so egregious that it nullified the purpose of the PCRA causing a complete denial of the opportunity to obtain relief?

II.  Whether trial counsel rendered ineffective assistance by: failing to obtain an expert report analyzing blood located on the barrel of a rifle; failing to obtain certain criminal records; and failing to investigate or call witnesses requested by the defendant?

III. Whether direct appeal counsel rendered ineffective assistance by: failing to raise a claim that police, in bad faith, either destroyed or failed to properly document exculpatory evidence; and by failing to argue a Brady claim with regard to certain criminal record[?]

(Doc. 12-9, Commonwealth v. Kohler, No. 3059 EDA 2013 at 1-6). On

January 30, 2015, the Pennsylvania Superior Court affirmed the denial of

Koehler's PCA petition. Id.

On May 11, 2015, Petitioner filed the instant petition for writ of habeas

corpus, in which he raises the following five claims:

1.   Whether the trial court's restrictions on Petitioner's cross examination of key prosecution witness Jose Joubert violated Petitioner's right to confrontation under the United States and Pennsylvania Constitutions?

2.   Whether the trial court violated Petitioner's due process right to present a defense by denying his request for a jury instruction on the principle of transferred intent in regard to the accidental shooting of Jennifer Cullinan in the course of shooting Jose Joubert in self-defense?

3.   Whether PCRA counsel's ineffective assistance was so egregious that it nullified the purpose of the PCRA causing a compete denial of the opportunity to obtain relief?

- 5 -

4.     Whether trial counsel rendered ineffective assistance by failing to obtain an expert report analyzing blood located on the barrel of the rifle; and failing to obtain certain criminal records; and failing to investigate or call witnesses requested by the defendant?

5.     Whether direct appeal counsel rendered ineffective assistance by failing to raise a claim that police, in bad faith, either did destroy or failed to properly document exculpatory evidence; and by failing to argue a Brady claim with regard to certain criminal records?

(Doc. 1 at 14-15).

## II.  Standard of Review

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). 28 U.S.C. §2254, provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States

....

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994) (citations omitted).

Section 2254(d)(1) applies to questions of law and mixed questions of law and fact. In applying it, this Court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. §2254(d)(1). It is " 'the

governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision'." Dennis v. Sec'y, Pennsylvania Dep't of Corr., 834 F.3d 263, 280 (2016) (*en banc*) (quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, this Court must determine whether the Superior Court's adjudication of the claim at issue was "contrary to" that law. Williams, 529 U.S. at 404-05 (explaining that the "contrary to" and "unreasonable application of" clauses of §2254(d)(1) have independent meaning). A state-court adjudication is "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States" §2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," id. at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. Williams, 529 U.S. at 406. Therefore, the issue in most federal habeas cases is whether the

adjudication by the state court survives review under §2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case'." Dennis, 834 F.3d at 281 (quoting Williams, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. Id. He must show that it " '*was objectively unreasonable'*." Id. (quoting Williams, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must demonstrate that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See Lockyer, supra, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, §2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under §2244). It preserves authority to issue the writ

> in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

Id. at 102.

The standard of review set forth at §2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" Burt v. Titlow, 571 U.S. 12, 18 (2013).7 "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." Dennis, 834 F.3d at 281 (quoting §2254(d)(2) and citing Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance'." Titlow, 571 U.S. at 18 (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)); see Rice v. Collins, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on

- 10 -

habeas review that does not suffice to supersede'" the state court's adjudication. Wood, 558 U.S at 301 (quoting Collins, 546 U.S. at 341-42).

If the Superior Court did not adjudicate a claim on the merits, the Court must determine whether that was because Petitioner procedurally defaulted it. If the claim is not defaulted, or if Petitioner has established grounds to excuse his default, the standard of review at §2254(d) does not apply and the Court reviews the claim *de novo*. See, e.g., Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). However, in all cases and regardless of whether the standard of review at §2254(d) applies, the state court's factual determinations are presumed to be correct under §2254(e)(1) unless Petitioner rebuts that presumption by clear and convincing evidence. Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010); Nara v. Frank, 488 F.3d 187, 201 (3d Cir. 2007) ("the §2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of §2254(d).") (citing Appel, 250 F.3d at 210).

Koehler's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## III. Discussion

## Claim One

Petitioner's first claim for review is whether the trial court's restrictions on Petitioner's cross examination of key prosecution witness Jose Joubert violated Petitioner's right to confrontation under the United States and Pennsylvania Constitutions. (Doc. 1 at 14). Specifically, Petitioner claims that the trial court prohibited Petitioner from questioning Joubert about "two arrests for drug dealing that occurred subsequent to the shooting incident about which he gave three different stories about how it happened. . .prior use of aliases and different birth dates in connection with prior arrests. . .prior record for drug dealing" and about "prior inconsistent statements to state troopers." Id. .at 17.

The right upon which Koehler bases this claim is the Sixth Amendment protection of an accused in a criminal prosecution "to have compulsory process for obtaining witnesses in his favor[.]" U .S. Const. Amend. VI. This Sixth Amendment right, in conjunction with the Due Process Clause, has also been recognized to confer a right to a "meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690 (1986). The Supreme Court recognizes that the right to offer testimony is grounded in the Sixth Amendment and that "[t]his right is a fundamental element of due

process of law." Taylor v. Illinois, 484 U.S. 400, 409 (1988) (quoting Washington v. Texas, 388 U.S. 14, 19 (1967)).

This right, however, is not absolute. Distilling its various precedents in 1998, the Supreme Court observed that "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." United States v. Scheffer, 523 U.S. 303, 308 (1998) (citing Taylor v. Illinois, 484 U.S. 400, 410 (1988); Rock v. Arkansas, 483 U.S. 44, 55 (1987); Chambers v. Mississippi, 410 U.S. 284, 295 (1973)). It noted that "[a] defendant's interest in presenting such evidence may thus 'bow to accommodate other legitimate interests in the criminal trial process.' " Id. (quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987)). To be sure, the Supreme Court recognizes that "'state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.'" Nevada v. Jackson, 569 U.S. 505, 509 (2013) (quoting United States v. Sheffer, 523 U.S. 303, 308 (1998)). The Court has explained that "[s]uch rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" Sheffer, 523 U.S. at 308 (quoting Rock v. Arkansas, 483 U.S. 44, 56 (1987)).

The Supreme Court has "[o]nly rarely" found that a right to present a complete defense was violated by the exclusion of defense evidence under a state rule. See Jackson, 569 U.S. at 509. But see Holmes v. South Carolina, 547 U.S. 319, 325 (2006) ("This Court's cases contain several illustrations of 'arbitrary' rules, i.e., rules that excluded important defense evidence but that did not serve any legitimate interests"). The circumstances under which the Court has found the exclusion of evidence to be in violation of the defendant's Sixth Amendment rights have involved state rules that "infringe[ ] upon a weighty interest of the accused," where "[t]he exclusions of evidence that [the Court] declared unconstitutional ... significantly undermined fundamental elements of the defendant's defense." Sheffer, 523 U.S. at 308, 315 (citing Rock, Chambers, and Washington ).

With respect to the question of what interests might permit a limitation on the defendant's Compulsory Process rights, the Supreme Court explained in Taylor that "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 410 (1988). See also Chambers v. Mississippi, 410 U.S. 284, 302 (1973) (noting defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability").

Pursuant to Rock v. Arkansas, 483 U.S. 44 (1987), and its progeny, the court must assess whether the exclusion of the evidence could be considered "arbitrary" as applied to Petitioner or whether the interests vindicated by application of the exclusion here were "disproportionate to the purposes [the state rules] are designed to serve." See Holmes v. South Carolina, 547 U.S. 319, 324–25 (2006) (quoting United States v. Sheffer, 523 U.S. at 308, and Rock v. Arkansas, 483 U.S. 44, 58 (1987)). If a constitutional violation were found, the court would then assess if only harmless error resulted. See Crane v. Kentucky, 476 U.S. 683, 691 (1986) (observing that erroneous ruling of trial court in violation of compulsory process rights "is subject to harmless error analysis").[1]

As the Eastern District of Pennsylvania recently noted:

The Sixth Amendment guarantees every criminal defendant the right "to be confronted with the witnesses against him." This right includes the ability of every criminal defendant to test the credibility of witnesses through cross-examination. The Supreme Court held, however, "[i]t does not follow . . . that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into

---

[1] A harmless error inquiry would also satisfy the habeas court's obligation under AEDPA to evaluate whether the state court's adjudication of a claim of trial court error "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," under 28 U.S.C. §2254(d) (1). See Fry v. Pliler, 551 U.S. 112 (2007) (observing that the Brecht harmless error test subsumes the §2254(d)(1)(Chapman harmless error test, such that the federal court need only apply the Brecht test).

- 15 -

> the potential bias of a prosecution witness." The trial court instead retains discretion to impose reasonable limits on the scope of cross-examination "based on concerns about, among other things, harassment, prejudice, confusion on the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." In sum, the Sixth Amendment "guarantees *an opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

Heyward v. Garvin, No. 20-6098, 2021 WL 1893218, at *18 (E.D. Pa. May 11, 2021).

On direct appeal, the Superior Court, finding no merit to Petitioner's claim, adopted the analysis of the trial court (see Doc. 17 at 7), which found the following:

> Pursuant to both the Pennsylvania and United States Constitution, a criminal defendant has a right to confront and cross-examine the witnesses against him. Commonwealth v. McCrae, 574 Pa. 594, 832 A.2d 1026, 1035 (2003) (citing Commonwealth v. McGrogran, 523 Pa. 614, 568 A.2d 924, 927 (1990)). Generally, "the credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these Rules." Pa.R.E. 607. "The character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct. Pa.R.E. 608. But, according to Pa.R.E. 609:
>
>> **(a) General Rule**. For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or nolo contendere, shall be admitted if it involved dishonesty or false statement.

Pa.R.E. 609. A defendant has a right to "impeach by showing bias[,]" i.e., to challenge the witness's self-interest "by questioning him about possible or actual favored treatment by the prosecuting authority[.]" Commonwealth v. Causey, 833 A.2d 165, 169 (Pa. Super. 2003). Additionally, the credibility of a witness may be impeached by evidence that he has prior crimen falsi convictions, meaning those that bear on a witness's honesty and truthfulness. Id.

The Defendant argues that the evidence of Mr. Joubert's drug sales arrests are relevant for purposes other than impeachment. He argues that it would show bias on Mr. Joubert's part by throwing doubt upon Mr. Joubert's blindness (as a result of the Defendant's actions) and would lend credibility to the Defendants' belief that Mr. Joubert was attempting to obtain a gun at the time he was shot. Finally, the Defendant argues that Mr. Joubert's use of aliases and varying birth dates proves both his bias and his disregard for the truth. We disagree.

> Pa.R.E. 403 states:
>
> Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Pa.R.E. 403. "Unfair prejudice" supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially. Commonwealth v. Wright, 961 A.2d 119 (2008).

In this case, the Defendant's arguments are lacking. First, the evidence of the Defendant's involvement with drug sales does nothing to throw doubt upon Mr. Joubert's blindness. There would be no reason to conclude that Mr. Joubert's blindness would preclude him from any involvement in the drug trade. Further, just because Mr. Joubert is involved in the drug trade

does not lend any credibility to the Defendant's belief that Mr. Joubert was attempting to obtain a gun at the time he was shot. Mr. Joubert, as stated in his testimony, was more likely fleeing, fearing that he would end up like decedent Gray. Finally, while Mr. Joubert's use of aliases arguable shows a lack of honesty, we note, as we did at trial, that the cross examination was based solely on Mr. Joubert's NCIC printout and not upon a substantiated report. [See N.T. 10/16/09, p. 63.]

We find that the probative value in including Mr. Joubert's arrests for drug sales and use of aliases, is outweighed by the danger of unfair prejudice and potential to mislead the jury in this case. The Defendant's attempt to bring this evidence in was merely an attempt to divert the jury's attention away from viewing the evidence impartially. As such, we find no error in our ruling.

The Defendant also argues that we unconstitutionally limited his cross examination of Mr. Joubert by specifically denying the Defendant an opportunity to confront the witness with his prior inconsistent statements to Troopers Maynard, Seip, Sommers and hospital personnel. Defendant believes that those statements contained substantial significant inconsistencies relevant to Mr. Joubert's credibility. We disagree.

Pa.R.E. 613, states in pertinent part:

**(b) Extrinsic evidence of prior inconsistent statement of witness.** Unless the interests of justice otherwise require, extrinsic evidence of a prior inconsistent statement by a witness is admissible only if, during the examination of the witness,

(1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;

(2) the witness is given an opportunity to explain or deny the making of the statement; and

(3) the opposing party is given an opportunity to question the witness.

- 18 -

Pa.R.E. 613(b). "A party may impeach the credibility of an adverse witness by introducing evidence that the witness has made one or more statements inconsistent with this trial testimony." McManamon v. Washko, 906 A.2d 1259, 1268 (Pa. Super. 2006). "Mere dissimilarities or omissions in prior statements…do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness' testimony to be admissible as prior inconsistent statements." Id.

An inconsistent statement can be admissible "to impeach a witness' credibility. However, it must be established that the witness, in fact, made the allegedly inconsistent statement." Id. "[A] summary of a witness' statement cannot be used for impeachment purposes absent adoption of the statement by the witness as his/her own." Id. The rationale for this rule is "[I]t would be unfair to allow a witness to be impeached on a police officer's interpretation of what was said rather than the witness' verbatim words." Id.

At trial, during the cross-examination of Mr. Joubert, the Defendant sought to read a police report based upon an interview with Mr. Joubert to impeach his testimony. Mr. Joubert denied that the contents of the report, as read by Defense counsel, accurately reflected what he had told the police. [N.T., 10/16/09, p. 65-66]. After an objection by the Commonwealth, we ruled that Defense counsel could no longer read the report aloud, but that the Defense was allowed to continue questioning Mr. Joubert based on the contents of this and other reports. [N.T., 10/16/09, p. 69.] Based on this ruling, Defense counsel continued his questioning of Mr. Joubert, in which he agreed with the contents of some of the reports and disagreed with others. [N.T., 10/16/09, p. 69-77]. Additionally, Defense counsel was able to call the police officers that interviewed Mr. Joubert and elicit testimony as to the exact contents of Mr. Joubert's prior statements to them. [N.T., 10/19/09, p. 5-7, 10, 12-17, 20-21.]

Because the statements at issue were not adopted by Mr. Joubert, we believe that we properly limited their use. Defense

counsel was permitted to question Mr. Joubert based on the content of these reports, but was not permitted to read the report aloud. As Defense counsel had in fact been able to confront Mr. Joubert with his prior inconsistent statements, as allowed under the rule, we find no error.

Finally, the Defendant argues that we unconstitutionally limited his cross examination of Mr. Joubert by specifically denying the Defendant an opportunity to confront the witness with decedent Gray's criminal history. We disagree.

According to Pennsylvania Rule of Evidence 402, "all relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Pa.R.E. 401. Moreover, "the evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person I order to show action in conformity therewith." 404(b)(1).

Absent additional evidence, the mere fact that Jason Gray had a criminal record does not tend to establish existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Mr. Gray's criminal history does not reveal anything pertaining to the circumstances of the offense at hand or that the Defendant was or was not a guilty party. The criminal record of Mr. Gray alone is simply not relevant to the Defendant's guilt or innocence. Accordingly, because the introduction of Jason Gray's criminal record would not have served any relevant purpose, we find that we properly excluded this evidence at trial.

(Doc. 17 at 42-46).

During its case-in-chief, the Commonwealth presented voluminous evidence that the slayings were deliberate and unjustifiable. Specifically, that

Commonwealth proved its case by means of physical evidence from the crime scene, the nature of the wounds inflicted upon the victims, the first-hand account of victim Jose Joubert, and the multiple false and contradictory statements made by Petitioner while interviewed by police. (See Doc. 12-10 – 12-11, Commonwealth's case-in-chief).

The lone surviving victim, Jose Joubert, testified that Petitioner shot him first, in the face and lower left side, forcing him to fall to the ground. Id. Joubert testified that Petitioner then shot and killed Mr. Gray (whom Joubert referred to as "Hood") after a brief struggle. Id. He then heard another struggle during which Ms. Cullins said, "[G]et off me, get off me." Id. She was suddenly silenced by another gunshot. Id. Joubert testified to then hearing another person come through the front door. Id. He heard Petitioner and the other person moving furniture and otherwise searching the house, after which Petitioner said, "[W]e ain't scoring the drugs, but we sure scoring the money. . . .Strip the victims." Id. Petitioner and the other person then removed Joubert's and Gray's pants and removed the money from both of their pockets. Id. Joubert testified that the door to the basement was then opened, and Petitioner dragged the three victims downstairs. Id. Just before being dragged by his ankles down to the basement, Joubert heard one of the two interlopers say, "[H]e's still breathing, finish him." The other

- 21 -

responded, "[H]e's going to die slowly." Id. Joubert was dragged to the basement and the door to the basement was shut. Id.

Joubert testified that he remained in the basement until he heard Petitioner's four-wheeler drive away. Id. He then crawled up over Gray's and Cullinan's bodies, at one point slipping on the bloody floor, and proceeded back to the area of the living rom couch. Id. He testified to pulling out the "nose" of the rifle hidden under the coach, so the weapon would be at hand should Petitioner return." Id. Noticing that he was weakening from blood loss, Joubert then crawled to the bathroom and washed his face. Id. He then testified to then finding Ms. Cullinan's dog and, holding on to the dog's collar, allowing the dog to lead him through the snow to the road where he was found and ultimately retrieved by paramedics. Id.

On cross examination, Joubert admitted that Mr. Gray was a dealer of crack cocaine, and he had paid Joubert to help him distribute cocaine at the time of the murders. Id. Defense counsel later attempted to delve into Joubert's criminal history. Id. Relying on an NCIC printout, defense counsel questioned Joubert about alleged aliases. Id. The Commonwealth objected because Joubert had no *crimen falsi*, and pointed out the uncorroborated, hearsay nature of an NCIC printout. Id. The Court sustained the objection. Id. Defense counsel, however, continued to question Joubert on the NCIC-

listed aliases, barreling through multiple sustained objections as if they were never made and only stopping after the granting of the Commonwealth's motion to strike. Id. Regardless, Mr. Joubert denied the use of aliases suggested by defense counsel. Id.

During the remainder of cross-examination, Joubert largely reiterated his testimony from direct, although admitting to knowledge of firearms in the house. Id. Joubert was also questioned by Mr. Gray's criminal history. Id. However, as with his own criminal history, the Court ruled such evidence as irrelevant and inadmissible. Id.

We do not find the state court's adjudication of this claim to reflect an unreasonable application of any United States Supreme Court authorities regarding the Confrontation Clause. While the "core" of the Confrontation Clause is the right to test the credibility of witnesses through cross-examination, see Davis v. Alaska, 415 U.S. 308, 315–16 (1974), Van Arsdall recognized that "[i]t does not follow ... that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). On the contrary, the Court in Van Arsdall also specifically noted that trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such

- 23 -

cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. Our Court of Appeals suggests that courts assess whether the trial court's ruling "significantly inhibited" the defendant's right to inquire into the witness's "motivation in testifying." See United States v. Chandler, 326 F.3d 210, 219 (3d Cir. 2003). If so, the court should then decide whether the constraints it imposed on the scope of the defendant's cross-examination fell within the "reasonable limits" that a trial court has the authority to establish in the exercise of its discretion. See id.

Petitioner maintains that he shot Joubert in self-defense. (Doc. 1 at 9). Specifically, he claims that both Jose Joubert and Jennifer Cullinan "moved in the direction of the shotgun" and "that is when they were shot by the Petitioner." Id. There is clearly no evidence that Koehler was prevented from inquiring into Joubert's testimony of the facts. The limiting of evidence and/or testimony admitted by the trial court did not prevent Petitioner from cross-examining Joubert on the knowledge of firearms in the house or his motive for pulling out the "nose" of the rifle hidden under the coach.

Insofar as Petitioner relies on state-evidentiary law to contest the evidence and testimony that was limited by the trial court on cross-

examination of Jose Joubert, his claim lacks merit. It is not the province of a federal court on habeas review to determine whether state courts have properly applied their own rules of evidence. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) (noting that a federal habeas court cannot decide whether the evidence in question was properly allowed under the state law of evidence). Claims regarding the admission of evidence only rise to the level of a federal constitutional violation if the challenged ruling "so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72 (internal quotation marks omitted) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  Thus, the Court finds that the trial court's restriction's witness, Jose Joubert, did not violate Petitioner's Confrontation Clause rights and, as a result, he is not entitled to habeas relief on this claim.

## Claim Two

Petitioner's second claim for review is that the trial court violated Petitioner's due process right to present a defense by denying his request for a jury instruction on the principle of transferred intent in regard to the accidental shooting of Jennifer Cullinan in the course of shooting Jose Joubert in self-defense. (Doc. 1 at 18).

The Court finds Petitioner's second claim not cognizable. The trial court's determination of whether or not to include a specific jury instruction under Pennsylvania state law, is not subject to federal review. Bradshaw v. Richey, 546 U.S. 74, 76, (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas review."); see also 28 U.S.C. §2254(a). Because "federal courts reviewing habeas claims cannot 'reexamine state court determinations on state law questions'," Koehler's state law jury instruction challenge is not cognizable in this proceeding. Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) (quoting Estelle, 502 U.S. at 67-68). Thus, this claim will be dismissed.

### Claims Three – Five

Petitioner's last three claims raise issues of ineffective assistance of trial, direct appeal and PCRA counsel. (Doc. 1 at 14-15). They are as follow:

3.    Whether PCRA counsel's ineffective assistance was so egregious that it nullified the purpose of the PCRA causing a compete denial of the opportunity to obtain relief?

4.    Whether trial counsel rendered ineffective assistance by failing to obtain an expert report analyzing blood located on the barrel of the rifle; and failing to obtain certain criminal records; and failing to investigate or call witnesses requested by the defendant?

5.    Whether direct appeal counsel rendered ineffective assistance by failing to raise a claim that police, in bad faith,

- 26 -

either did destroy or failed to properly document exculpatory evidence; and by failing to argue a <u>Brady</u> claim with regard to certain criminal records?

<u>Id</u>.

## **Ineffective Assistance of Trial Counsel Claims**

Claims of ineffective assistance are governed by the standard set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Strickland recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence. 466 U.S. at 685-87. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" <u>Titlow</u>, 571 U.S. at 24.

Under <u>Strickland</u>, it is Petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Id</u>. at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" <u>Titlow</u>, 571 U.S. at 22 (quoting

Strickland, 466 U.S. at 690); Richter, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting Strickland, 466 U.S. at 689). Counsel cannot be deemed ineffective for failing to raise a meritless claim. See, e.g., Preston v. Sup't Graterford SCI, 902 F.3d 365, 379 (3d Cir. 2018).

Strickland also requires that Petitioner demonstrate that he was prejudiced by trial counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Counsel's errors must be so serious as to have "deprive[d] [Petitioner] of a fair trial, a trial whose result is reliable." Id. at 687. Under Strickland, "[t]he likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112.

The Supreme Court in Strickland noted that although it had discussed the performance component of an effectiveness claim prior to the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order. 466 U.S. at 697. If it is more efficient to dispose of an ineffectiveness claim on the ground that the petitioner failed to meet his

burden of showing prejudice, a court need address only that prong of Strickland. Id.

At the time the Pennsylvania State Court reviewed the ineffective assistance claims raised by Colon, Strickland's two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state law, a three-pronged test is applied to ineffective assistance of counsel claims. See Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973, 975-977 (Pa. 1987). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2000).

The Superior Court addressed Petitioner's ineffective assistance of counsel claims as follows:

> To establish ineffectiveness of counsel, "a PCRA petitioner must show the underlying claim has arguable merit, counsel's actions lacked any reasonable basis, and counsel's actions prejudiced the petitioner." **Commonwealth v. Jones**, 71 A.3d 1061, 1063 (Pa. Super. 2013) (citation omitted), **appeal denied**, 84 A.3d 1062 (Pa. 2014). "Prejudice means that, absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have different." **Id.** (citation omitted). If a reasonable basis exists for the particular course chosen by counsel, the inquiry ends and counsel's performance is deemed constitutionally effective. **See Commonwealth v. Lauro**, 819 A.2d 100, 106 (Pa. Super. 2003). Failure to satisfy any prong of the test requires that the claim be dismissed. **See**

**Commonwealth v. O'Bidos**, 849 A.2d 243, 249 (Pa. Super. 2004).

In his first issue, Koehler raises a blanket challenge to PCRA counsel's effectiveness. We note, however, that Koehler did not challenge his PCRA counsel's effectiveness before the PCRA court.[2] As such, this claim is waived. **See Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014), **appeal denied**, 101 A.3d 785 (Pa. 2014) (claims of PCRA counsel's ineffectiveness may not be raised for the first time on appeal).

Koehler's remaining claims challenge the effectiveness of trial counsel. In his second issue on appeal, Koehler alleges that trial counsel was ineffective for failing to obtain blood spatter analysis and for failing to request the criminal records of victims Jason Gray and Jose Joubert. However, Koehler has not himself obtained either the blood spatter analysis or the aforementioned criminal records for our review. As we are prevented from examining the very evidence Koehler now deems trial counsel was ineffective for failing to obtain, we are unable to determine in what way Koehler was prejudiced by counsel's alleged misconduct in this regard. Accordingly, these claims fail.

We likewise find no merit to Koehler's claim that trial counsel was ineffective for failing to investigate or call certain witnesses. Trial counsel will not be deemed ineffective for failing to call a witness to testify unless it is demonstrated that:

> (1) the witness existed; (2) the witness was available; (3) counsel knew of, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial to petitioner to have denied him or her a fair trial.

---

[2] Although Koehler filed an application to proceed *pro se* on appeal on the basis of PCRA counsel's ineffectiveness, he did not raise the issue of counsel's ineffectiveness during the **Grazier** hearing, and the PCRA court did not have the opportunity to address this issue below.

**Commonwealth v. Brown**, 18 A.3d 1147, 1160-1161 (Pa. Super. 2011) (citation omitted).

Instantly, although Koehler insists that trial counsel was informed of the existence of the alleged witnesses, he does not establish the identity of any witnesses or their availability at the time of trial. Koehler does not even set forth the substance of the witnesses' testimony. Without this necessary evidence we are unable to conclude that the absence of the testimony was so prejudicial to petitioner to have denied him or her a fair trial. Accordingly, Koehler's claim that counsel was ineffective for failing to call certain unidentified witnesses is without merit.

Koehler presents two related claims in his third and final issue. Koehler first agues that trial counsel was ineffective for failing to raise a claim that the police, in bad faith, destroyed or failed to preserve potentially exculpatory evidence. Koehler references a Pennsylvania State Police lab report indicating that three swabs of human blood were taken from the rifle used in the murders and retained for potential DNA analysis. **See** Appellant's Brief at 22-23. Koehler does not indicate that he has independently attempted to ascertain the existence of the blood swabs; nor does he present this evidence for our review. Koehler's claim that the police destroyed or failed to preserve this evidence, or even that the alleged evidence would prove exculpatory, is purely speculative. We therefore find no basis on which to deem counsel ineffective for failing to advance this specious argument.

Koehler alternatively contends that counsel was ineffective for failing to argue that the Commonwealth's alleged failure to provide the blood swab evidence violated the Supreme Court's decision in **Brady v. Maryland**, 373 U.S. 83 (1963).

> In **Brady**, the United States Supreme Court held that a defendant's due process rights are violated when the prosecution withholds favorable, material evidence from the defense. To prove a **Brady** violation, the defendant bears the burden of demonstrating that: (1) the prosecutor has suppressed evidence; (2) the evidence, whether

exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant. Therefore, even if the first two prongs have been established, a defendant must establish that he was prejudiced by the failure to disclose. To establish prejudice, the defendant must prove that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

**Commonwealth v. Pugh**, 101 A.3d 820, 825 (Pa. Super. 2014) (internal citations and quotation marks omitted).

Herein, Koehler fails to satisfy his burden of demonstrating any of the three prongs required to establish a **Brady** violation. Koehler does not demonstrate that the Commonwealth suppressed the evidence, that the evidence was exculpatory, or in what way he was prejudiced by the alleged suppression. This claim is patently meritless.[3]

As we find no merit to any of the claims Koehler raises on appeal, we affirm the order denying PCRA relief.

(Doc. 12-9, Commonwealth of Pennsylvania v. Koehler, No. 3059 EDA 2013

at 6-10).

The state court found Claim Three, Koehler's blanket challenge to

PCRA counsel's effectiveness, waived, for Petitioner's failure to challenge

---

[3] Koehler bootstraps to his **Brady** claim the Commonwealth's alleged failure to produce the criminal records of Jason Gray and Jose Joubert. **See** Appellant's Brief at 24-25. As Koehler similarly fails to satisfy any of the three prongs necessary to establish a **Brady** violation with regard to this bald allegation, we find this claim is also without merit.

his PCRA counsel's effectiveness before the PCRA court. As such, this claim is now procedurally defaulted on federal review.

A petitioner may avoid the default of a claim by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"[4] Coleman v. Thompson, 501 U.S. 722, 750 (1991). "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" Id. at 753.

The general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely upon PCRA counsel's ineffectiveness to establish the "cause" necessary to overcome the default of a federal habeas claim. Id.; Davila v. Davis, —— U.S. ——, 137 S. Ct. 2058, 2062, 198 L.Ed.2d 603 (2017). In Martinez v. Ryan, 566 U.S. 1 (2012) the Supreme Court announced a narrow exception to this rule. In relevant part, it held that in states like Pennsylvania, where the law requires that claims of ineffective assistance of trial counsel be raised for the first time

---

[4] A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). In only the extraordinary case will a petitioner be able to establish a "fundamental miscarriage of justice," and this is not one of the rare cases in which that rule is implicated.

in a collateral proceeding, a petitioner may overcome the default of a claim of trial counsel's ineffectiveness. To do so, the petitioner must demonstrate: (1) the defaulted claim of trial counsel's ineffectiveness is "substantial" and (2) PCRA counsel was ineffective within the meaning of Strickland v. Washington, 466 U.S. 668 (1984) for (3) failing to raise that claim in the "initial review collateral proceeding" (meaning to the PCRA court). Martinez, 566 U.S. at 17. The holding in Martinez is limited to defaulted claims asserting that trial counsel was ineffective. See, e.g., Davila, 137 S. Ct. at 2062-70. It does not apply to any other type of defaulted claim. Id.

Petitioner claims that he is "aware that I.A.C. of PCRA counsel is not a claim that can be raised in federal court" and is attempting to invoke Martinez, to "excus[e] a procedural default of an I.A.C. claim against trial counsel that is found to have been waived by PCRA counsel's ineffectiveness." (Doc. 1 at 19). Specifically, Petitioner contends that the limited exception of Martinez permits him to overcome the procedural default of trial counsel's ineffectiveness in failing to call Joy Edington and Curtis Lumont Williams as defense witnesses. Id. at 6. It does not.

Here, Petitioner was represented by counsel at the initial-review proceedings. At Petitioner's PCRA hearing, PCRA counseled noted that the issue was raised in Petitioner's PCRA petition and questioned Petitioner on

the importance of looking into Joy Edington and Curtis Lumont Williams as potential witnesses and that trial counsel never discussed with Petitioner why he chose not to put either individual on the stand. (Doc. 12-5 at 34). During the pendency of Petitioner's PCRA appeal, he requested to proceed *pro se*. (Doc. 12-9 at 5). The Superior Court remanded the proceedings to the PCRA court to conduct a hearing pursuant to Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998), in order to determine whether Koehler's waiver of counsel was knowing, intelligent and voluntary. (Doc. 12-9 at 5). After the PCRA court conducted the Grazier hearing, it permitted Koehler to proceed *pro se*. Id. Petitioner then filed his own *pro se* appeal before the Pennsylvania Superior Court. Id. Thus, the holding in Martinez does not assist Petitioner for two reasons.

First, Martinez applies only to defaulted ineffective assistance of counsel claims that were **not raised by PCRA counsel at the initial-review** collateral proceedings. Martinez, 566 U.S. at 17 (emphasis supplied). As is apparent from the record, Petitioner was represented by counsel at the initial-review collateral proceedings and counsel raised the presently defaulted ineffective assistance of counsel claim.

Second, Petitioner was proceeding *pro se* before the Superior Court in his PCRA appeal. Thus, the failure to raise Claim Three is solely attributable

to him. He cannot blame PCRA counsel because counsel was permitted to withdraw after Petitioner was permitted to proceed *pro se* after the <u>Grazier</u> hearing. Consequently, Petitioner cannot rely on <u>Martinez</u> to excuse his default of Claim Three. Thus, Petitioner is not entitled to this Court's review of Claim Three.

Finally, the state court addressed both Claims Four and Five together, finding Petitioner's claims of ineffective assistance of counsel meritless. The Court agrees with the State court's finding that Petitioner has failed to establish that his counsel's representation fell below an objective standard of reasonableness and that Petitioner failed to demonstrate that he was prejudiced by trial counsel's alleged deficient performance.

Initially, with respect to Petitioner's claim that counsel was ineffective for failing to have DNA testing conducted on the blood samples taken from the .22 Marlin and the closet door at the scene, Petitioner does not maintain that someone else committed the crime and that the DNA will uncover the unknown perpetrator. To the extent that Petitioner argues that determining that Jason Gray's blood was on the gun would put the gun in Gray's hands, thus bolstering Petitioner's self-defense claim, the Court finds such argument speculative, as it was demonstrated at trial there were any number of ways Gray's blood could have ended up on the gun. (See Doc. 12-10 – 12-14, trial

- 36 -

transcripts). Gray's blood could have easily gotten on the gun as a result of his massive head wound, or it could have been on Joubert's hands when he clutched the Marlin after climbing through Gray's and Cullinan's blood. Id. Moreover, even supposing that DNA results could put the Marlin in Gray's hands, they could not ultimately prove that Gray pulled out the Marlin first and could not disprove the contention that Gray was only reacting to Petitioner's drawing the murder weapon. Thus, the DNA results would not support Petitioner's self-defense claim. As such, counsel cannot be ineffective for failing to pursue a meritless claim. United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

Plaintiff's last claim is that trial counsel was ineffective for failing to obtain the criminal histories of Jason Gray and Jose Joubert and direct appeal counsel rendered ineffective assistance by failing as well to object to the Commonwealth's suppression of same. Both of these claims were raised at Petitioner's PCRA hearing, where it was established that the Commonwealth provided NCIC printouts at trial. (Doc. 12-5). Petitioner failed to present any evidence that the Commonwealth suppressed any evidence rather than disclose it to the defense. Id. In fact, Petitioner admitted that the Commonwealth tried to obtain Jason Gray's criminal record from another state but was "rebuffed." Id. Thus, the fact that the defense did not have

access to anything but the NCIC printouts supplied by the Commonwealth because no other copy of criminal records could be had, does not equate with a violation of the Commonwealth's discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963); Commonwealth v. Weiss, 81 A.3d 767, 792 (Pa. 2013) ("[A] prosecutor's disclosure obligation encompasses only information known or readily ascertainable by the government actors involved in the prosecution."). Moreover, Petitioner has failed to demonstrate the existence of such records, the importance of their contents, and any prejudice he has suffered by such records not being available for his case. See Saranchak v. Beard, 616 F.3d 292, 311 (3d Cir. 2010) ("It is firmly established that a court must consider the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied.") (quoting Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999)). Thus, Petitioner has failed to show "a reasonable probability that, but for trial and appeal counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 104. Consequently, relief is denied on Claims Four and Five of the petition.

**V.      Certificate of Appealability**

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" Tomlin v. Britton, 448 Fed.Appx. 224, 227 (3d Cir. 2011) (citing 28 U.S.C. §2253(c)). "Where a district court has rejected the constitutional claims on the merits, ... the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

For the reasons set forth herein, Petitioner has not made a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable that Court's assessment of the claims debatable or wrong. Accordingly, a COA will not issue.

## VI.    <u>Conclusion</u>

For the reasons set forth above, the Court will deny the petition for writ of habeas corpus. A separate order shall issue.


<u>*s/ Malachy E. Mannion*</u>
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 11, 2022**
15-0912-01